THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABRAHAM SCHALLMAN, Plaintiff in Error.

*Opinion filed June 22, 1916.*

1. CRIMINAL LAW—*when page of a loose-leaf ledger is not admissible.* In a prosecution for receiving stolen silk, which the defendant claims he purchased at reasonable prices and in the usual course of business from the thief, who conducted a silk-jobbing office, a page of a loose-leaf ledger from such office purporting to contain a statement of purchases made by the defendant at very low prices is not admissible, where the employee who made up the statement testifies that she made it entirely at the dictation of the thief and that the defendant was not present, and there is no evidence as to the truth or correctness of the entries or that the defendant knew of their existence.

2. SAME—*when statements by third party against accused are not admissible.* Declarations or statements of any kind made out of court against a person accused of crime and in his absence and without his knowledge are not admissible in evidence, as the accused has a constitutional right to meet his accusing witnesses face to face.

3. SAME—*People are not entitled to show that accused has been formerly convicted of a misdemeanor.* In Illinois it is not permissible, in a criminal case, to put in evidence against the accused his conviction of any offense other than those offenses declared by the statute to be infamous, and it is therefore error to permit the State to get before the jury the fact that the accused had once been convicted of a misdemeanor in another State.

4. SAME—*incriminating accusations which are denied by the accused when made are not admissible.* Testimony by dectectives detailing incriminating accusations which they claim were made by the thief against the accused and which they repeated to the accused before his arrest are not admissible, where the accused denied the accusations *in toto* when they were repeated to him; and this is true whether or not the accusations were, in fact, made as claimed.

5. SAME—*what not a proper exhibit.* A piece of silk cut from a bolt found on the person of the thief but which was never in the possession of the defendant should not be admitted as an exhibit in a prosecution for receiving stolen property, to enable witnesses to testify to its value and that the silk which was found in the possession of the defendant was the same quality or about the same.

6. SAME—*when exhibit need not be certified as part of the bill of exceptions.* Where the record, by verbal descriptions or other-

wise, gives all the facts connected with an exhibit necessary to a full understanding of it and to enable a court of review to pass upon the correctness of the trial court's ruling with reference thereto, it is not necessary that the exhibit be certified as a part of the bill of exceptions.

7. SAME—*knowledge that the goods were stolen is essential to crime of receiving stolen property.* In a prosecution for receiving stolen property, actual knowledge by the accused that the goods were stolen, or the existence of such facts as will authorize the jury to presume knowledge, must be proved beyond a reasonable doubt; and it is not correct to instruct the jury, as an abstract rule of law, that one who willfully disregards suspicious circumstances is chargeable with guilty knowledge, notwithstanding he did not have actual knowledge of the theft.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN M. O'CONNOR, Judge, presiding.

STEDMAN & SOELKE, for plaintiff in error.

P. J. LUCEY, Attorney General, and MACLAY HOYNE, State's Attorney, (EDWARD E. WILSON, and DWIGHT Mc-KAY, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Abraham Schallman, was convicted of receiving stolen property of the value of $150, at the June term, 1915, of the criminal court of Cook county. Motions for new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to the penitentiary.

The evidence in the record tends to show that Charles Hoffman, a young man twenty-four years of age, was employed in the lining department of Marshall Field & Co.'s wholesale store in Chicago as order filler, city buyer and floor salesman. He was not employed in the silk department, which was just across the aisle, opposite the lining department. A large quantity of silk disappeared from the stock of Marshall Field & Co. in that department. Hoffman was suspected of stealing the silk, and in June, 1913, he was followed by a detective about noon of June 19,

1913, from said store to the Medinah Temple, where he had an office, and when he got off the elevator at the fourth floor he was arrested and found to have concealed on his person a bolt of silk that he had stolen from Marshall Field & Co. Hoffman had maintained a jobbing office in the Medinah Temple for the sale of silks and satins from April, 1913, up to the time he was arrested by John Hopper, an operative of McGuire & White's detective agency of Chicago, and had a sign on his door, "C. Hoffman & Co., Jobbers in silks and satins.—Charles Hoffman and M. Wallbaum, representatives." M. Wallbaum was Mabel Wallbaum, a stenographer, who worked for Hoffman from April 18 to June 19, 1913, who testified that she had no interest in the business and had merely allowed him to put her name on the door, and that she did not know where the goods in stock came from, as they usually came in when she was out at lunch. The office was about fifteen feet square, and there was about $2000 worth of silks and satins there when Hoffman was arrested. There were no letter-heads nor postcards found in the office, and the stenographer did very little writing and seems to have transacted none of the business connected with sales of the goods except to record sales in a loose-leaf ledger at the dictation of Hoffman. On one of those loose ledger leaves was found an entry of an account, "No. A-1," against A. Schallman, 219 South Dearborn street, at which address plaintiff in error was engaged in the business of jobbing silks, satins and cotton linings and manufacturing ladies' suits and garments. That sheet purported to show the entries of twenty-seven sales of messaline silk and another item of shirtings, dating from April 10, 1913, to May 29, 1913, at prices ranging from twenty-six cents to $1.60 per yard, only one lot being priced higher than forty-two cents per yard. The aggregate amount of the sales appeared to be $7355.60, and the total profits to Hoffman on these sales were shown to be $1319. Subsequent to the arrest of Hoffman the plaintiff in error was

visited by Hopper, who learned from the man employed at the Temple building as a delivery man that Hoffman had sent goods by him to plaintiff in error's shop. Hopper testified that he told plaintiff in error about Hoffman being arrested and that he had come after the silk Hoffman sold him, and asked him if he had any of it there. Plaintiff in error, after some hesitancy, answered him that he had none of it there but that he had several bolts of it in the building there. Schallman then went after them, and in a short while returned with a large package and showed Hopper eight bolts of silk that Hoffman had sold him, and assented to allowing Hopper to send over and get some of Marshall Field & Co.'s men to identify it. It appears that said employees could only identify two bolts of the silk as belonging to Marshall Field & Co., were in doubt about two other bolts and were of the opinion that two of the bolts did not belong to them. Hopper asked plaintiff in error to allow him to take possession of all eight bolts of silk, but plaintiff in error at first refused to allow him to take any of the silk unless. identified as belonging to Marshall Field & Co., as he had bought and paid for it, but finally, upon being threatened that it would be taken with a search warrant, allowed Hopper to take the eight bolts on giving him a receipt for the same. Plaintiff in error denied to Hopper all knowledge that the goods were stolen and insisted that he bought them at a fair price,—the usual jobber's prices. Hopper then said to him, as Hopper claims, "Well, you know silk very well and you bought some of it pretty cheap,—$10 a bolt," and that Schallman replied, "Well, I would buy it for $5 if I could buy it for that." He further testified that Schallman told him that he had bought more than $6000 worth of silk from Hoffman.

Plaintiff in error testified that he knew Hoffman and had met him at Marshall Field & Co.'s wholesale store several times, where he bought cotton and satin linings but never bought any silk there; that he bought from Hoffman

from $800 to $1200 worth of silk, at most, while Hoffman was in business at the Medinah Temple and paid as high as fifty-five cents a yard for some of it, and that he paid about the usual jobber's prices for all he bought; that he saw Hoffman a few times at his place of business, generally between one and two o'clock; that while trading at Marshall Field's Hoffman asked him if he was buying in job-lots any silks, and handed him a card and asked him to call on him at his place of business and told him that his partner was a Mr. Wallbaum, and that that was the way he came to do business with him. He denied all knowledge of the fact that the goods were stolen, or to his being in any way connected with Hoffman, or of knowing what Hoffman's salary was at Marshall Field & Co.'s store, or of having ever talked with him about his salary or business, except to buy goods from him in a regular and legitimate way. He produced other witnesses tending to corroborate the claim that he bought them in a regular business way, openly and at reasonable prices. There was evidence for the State tending to show that he bought the goods at very low prices, in some instances for less than half their value.

Hoffman had plead guilty to larceny of silk goods stolen by him from Marshall Field & Co. and was serving his term when this case was tried. The State asked the court to call him as a witness and examine him, as counsel for the State did not want to vouch for him as their witness. The court called and examined him over the objections of the plaintiff in error, and finally the State cross-examined him at length, but he refused to answer any questions as to whether or not Schallman knew anything about the goods being stolen or had any connection with him in stealing them, merely stating that he had been convicted on the charge of larceny, was serving his time and wanted to get out and start life anew and did not want to perjure himself.

As this cause must be reversed for errors assigned we do not desire to discuss the case on the merits.

To prove that the plaintiff in error bought goods from Hoffman with knowledge that they were stolen, the State introduced the page of the loose-leaf ledger of Hoffman containing a supposed account against Schallman or a statement of goods sold by Hoffman to Schallman, already referred to in this opinion. Mabel Wallbaum testified that she made out this statement on that leaf herself, purely at the dictation of Hoffman, entering the items and dates of sales and the amount of each sale as he announced it. She knew nothing about the sales nor whether any such sales were ever made or not, and there is no other evidence in the record concerning this entry. No witness even testified to the truth or correctness of the items of the book account, and she positively testified that plaintiff in error was not present when the items were entered and knew nothing of the existence of such entries so far as she knew, and there is no evidence in the record that he did know of them. The evidence was clearly inadmissible and was very damaging to plaintiff in error, as it contradicted his testimony as to the amount of goods he bought of Hoffman and corroborated the witness Hopper in his testimony that plaintiff in error told him he had bought over $6000 worth of goods from Hoffman. The State makes the contention that it was admissible to prove that Hoffman stole the goods. That was not the effect of it, and besides it was well proved that Hoffman did steal the goods, or a part of them found in plaintiff in error's possession, by witnesses who identified them by the private and secret cost mark of Marshall Field & Co. found on the goods. Declarations out of court, or statements of any kind by a third person against the accused and made in his absence and without his knowledge, are inadmissible as evidence against him. The rule is elementary, and a violation of it is a violation of the accused's constitutional right that he shall not only be informed of the nature of the charge against him but be permitted to meet the accusing witnesses face to face.

Hopper and McGuire, two detectives, were permitted to testify for the prosecution, over the plaintiff in error's objection, what they stated to him at his office shortly after the arrest of Hoffman. The admission of this evidence was clearly prejudicial error. There is too much of it to repeat here all of it. Hopper prefaced his testimony with this statement to the jury of what he said to Schallman when he went to his place of business after arresting Hoffman: " 'I came over to get some silk that a man named Hoffman stole from Marshall Field & Co. and sold to you; you know me, don't you?' and he says, 'Yes, I do; you are the man that bribed a lot of people and took them down to Fort Wayne, Indiana, when I was on trial down there, and they swore they would not believe me on oath;' and I said, 'No, I am not the man that bribed anybody but I am the man that took a lot of people down there. * * * The jury found you guilty, and they must have believed those men that I took down there;' and at that Mr. Schallman walked up and down in a regular rage and became very much excited." It developed later in the evidence that plaintiff in error was convicted in Indiana of obtaining goods by false pretenses and was fined $25 and costs of prosecution. By the testimony of this witness the State succeeded in getting before the jury the fact that plaintiff in error had been convicted of a misdemeanor. In criminal cases it is not permissible in this State to put in evidence against an accused his conviction of any offense other than those declared by the statute to be infamous offenses. The conviction for an infamous offense can only be proved, in such cases, by the record of conviction and not by parol evidence over the objections of the accused. (*Bartholomew* v. *People,* 104 Ill. 601.) This particular objection was not raised and is not argued by plaintiff in error but the testimony was objected to as incompetent.

These two witnesses further testified, in substance, that they told Schallman that Hoffman had been arrested and

had admitted stealing the silks from Marshall Field & Co.; that Hoffman said to them that he had sold the stolen goods to Schallman for $10 a bolt and that Schallman knew they were stolen; that after he (Hoffman) had been engaged in such stealing and selling of silks for some time Schallman suggested to him that he (Hoffman) open a jobbing office, as it might look better, and that he opened such office at Schallman's suggestion; that after some boys had been arrested for stealing from Marshall Field & Co. he (Hoffman) concluded to quit stealing and so informed Schallman, and that Schallman told him he had a customer whom he did not want to disappoint and urged him to steal a few more pieces, which he did; that after he (Hoffman) had been arrested he made his escape from the officers and met Schallman and told him he was in trouble and that Schallman gave him $100 with which to get out of the city. Both McGuire and Hopper testified that when they told Schallman those things that Hoffman had told them, Schallman denied the incriminating statements of Hoffman against him *in toto,* admitting only that he did purchase the silks from Hoffman and insisting that he did not know they were stolen. The principle upon which statements or accusations made in the presence of one accused of crime are admitted in evidence against him is, that his silence when he might, and naturally would, deny the accusations of guilt if they were untrue is regarded as an acquiescence of their truth and an implied admission of guilt. Where the incriminating statements or accusations are denied *in toto* by the accused there can be no implied admission of his guilt and such statements are wholly inadmissible against him. (*People* v. *Harrison,* 261 Ill. 517.) While it is immaterial whether Hoffman ever did, in fact, make the statements to the officers attributed to him, so far as this ruling is concerned, nevertheless it is true that there is no proof in this record that Hoffman made such statements to them or to anyone at any time.

A certain piece of silk cut off of the bolt of silk found on Hoffman's person when arrested by Hopper was put in evidence by the State as an exhibit, for the purpose of proving the value of goods received by plaintiff in error. Experts testified that the piece of silk was worth $1.25 per yard. One witness testified that it was the same, or about the same, goods as the silk found in Schallman's possession. The testimony showed that Schallman never bought that piece of silk and never had it in his possession. The pieces or bolts found in his possession and belonging to Marshall Field & Co. were not put in evidence nor their absence accounted for, and it was error to allow this piece to be made an exhibit and permit witnesses to testify as to its value for the purpose of proving the value of the silk received by plaintiff in error. It is insisted that the court's action in overruling objections to this exhibit cannot be questioned as it does not accompany the record as a part of the bill of exceptions. The record by verbal descriptions gives all the facts connected with this exhibit necessary to a full understanding of it and to enable this court to pass upon the question raised concerning it, and it was therefore not necessary to certify the original exhibit. There are many exhibits introduced in criminal cases, such as firearms, knives, clothing of a deceased or wounded person, and other such exhibits, that are not ordinarily certified to the reviewing court. It is not the practice to certify such exhibits, and it is not necessary to have any such exhibit certified when it is so completely described and its relation to the other facts so well understood by the references to it in the record that the reviewing court may readily understand and comprehend its full force and effect as evidence in the case.

The court erred in giving the State's instruction No. 19, which reads as follows:

"That one who purchases property from the possessor thereof is bound to use the ordinary discretion and caution

of a reasonable man and should not disregard any circumstance in connection with the possession of or terms on which personal property is offered for sale that would reasonably tend to arouse the suspicion of an ordinarily prudent man that such personal property was the proceeds of a burglary or larceny or robbery. And you are further instructed that one who willfully disregards such suspicious circumstances is chargeable with guilty knowledge of the theft of such personal property, notwithstanding he did not have actual knowledge of the theft."

This instruction is bad because it is a mere abstract proposition of law and was not specially applied to the case in hand by appropriate words requiring the jury to find the necessary facts upon which it purports to be based. By the last clause thereof the jury might conclude that the court assumed to decide for them as a fact that Schallman had willfully disregarded the suspicious circumstances in evidence in this case and should be convicted. It invades the province of the jury, and, besides, is not a correct statement of the law. An instruction upon the subject of receiving stolen property that informs the jury that actual knowledge by the accused that the goods were stolen is not necessary to constitute the crime is erroneous. While such knowledge may be proved by circumstances, yet actual knowledge or the existence of such facts as would cause the jury to presume knowledge must be proved beyond a reasonable doubt by competent evidence, like every other material averment in the indictment. *Cohen* v. *People,* 197 Ill. 482; *May* v. *People,* 60 id. 119.

It is apparent from the foregoing that the defendant was greatly prejudiced in his trial by reason of the foregoing errors, and the judgment of the criminal court is therefore reversed and the cause remanded.

*Reversed and remanded.*