(No. 22377.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED E. HAMMOND *et al.*—(WALLACE G. SIEMEN, Plaintiff in Error.)

*Opinion filed June 19, 1934.*

REUBEN R. TIFFANY, for plaintiff in error.

OTTO KERNER, Attorney General, DONALD M. EATON, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Jo Daviess county of the charge that he, as cashier of the State Bank of Stockton, received a deposit of $55 from one Leonard S. Beattie knowing that the bank was insolvent. With him were indicted Fred E. Hammond and Ralph M. Hammond, also officers of the bank. Plaintiff in error was granted a separate trial. The Appellate Court for the Second District affirmed the judgment. The cause is here on writ of error.

Prior to the motion for severance plaintiff in error filed a motion, supported by affidavit, challenging the array of the grand jury on the ground that certain members of that body were depositors of the bank at the time it was closed

and others were interested in the proceedings to liquidate the bank. This motion was overruled. A motion was then made that the State's attorney furnish a copy of the evidence of one Justin Jager, who appeared as a witness before the grand jury but whose name was not endorsed on the indictment. The motion was allowed and a copy of the testimony was furnished, whereupon plaintiff in error by his counsel filed it, with a motion to quash the indictment on the ground that the foreman of the grand jury did not endorse the name of Jager on the indictment and so the indictment was void. The motion to quash was overruled.

The evidence as to the deposit was given by the witness Beattie, who testified that on the day the bank was closed he presented a check for $163.70, receiving therefor a draft of the bank for $85.56, cash in the sum of $23.14 and a certificate of deposit for $55. Plaintiff in error's counsel moved to strike the testimony of this witness on the ground of a variance between the indictment and the proof. This motion was overruled.

The bank was closed on September 6, 1928, on order of the Auditor of Public Accounts and a receiver was appointed to liquidate the business of the bank. To prove insolvency of the bank the People offered in evidence the decree appointing a receiver. The receiver was called as a witness and testified to an inventory of assets and liabilities of the bank furnished him by the Auditor. He also testified to his attempt to collect numerous notes inventoried as assets of the bank. Among the larger of the notes held by the bank were those of Ralph M. Hammond, F. E. Hammond and A. M. Hammond. He testified that the claims against Ralph M. and F. E. Hammond had been filed in bankruptcy proceedings brought against the Hammonds and that he had received no dividends on them. There were also among the assets bonds in the sum of $51,000 of the Bijou Hog Farm, Incorporated, secured by

a mortgage on 7160 acres of land in Colorado. He testified that nothing had been paid nor collected thereon; that a committee was appointed to go out and look over the land, and that he also employed an appraiser to look at it. He was permitted to testify that there was a prior mortgage on this land and to give the report of the committee and appraisers appointed by him and to tell what they thought concerning the value of the land and of the advisability of paying off the first mortgage. This evidence was admitted over the objection of plaintiff in error that it had to do with the question whether the bank was insolvent at the time the deposit was received and was hearsay. It is earnestly argued here that this testimony was incompetent as hearsay and highly prejudicial.

As to many of the notes held as assets of the bank the receiver testified that he knew nothing of their value, and no other testimony appears in the record concerning the value of such notes. The bankruptcy schedules of the estate of F. E. Hammond, Ralph M. Hammond and Helen I. Hammond were placed in evidence over plaintiff in error's objection that they were incompetent as not tending to prove the issue raised by the indictment, as the schedules showed that bankruptcy proceedings against the Hammonds were not instituted until after the bank was closed.

Plaintiff in error testified that he believed the bank solvent at the time this deposit was accepted; that it was accepted on the day that the bank examiners were there, and that at that time there was no intimation from them that the bank was in an insolvent condition. He testified that he considered the greater part of the notes of the bank good; that while he knew the Hammonds had other indebtedness, he also knew that they owned a great deal of property and thought their notes were good. He denied that he took the deposit fraudulently. He testified that he had seen the Bijou Valley Hog Farm and considered it a very valuable piece of property, and that he did

not know there was a first mortgage on it ahead of the bonds held by the bank. At the close of all the evidence plaintiff in error renewed his motion for a directed verdict, which was overruled.

Numerous errors have been assigned. It is first contended that the court erred in overruling the challenge to the array of the grand jury and that the Appellate Court erred in not reversing the trial court. The People argue that it was not error to overrule the challenge to the array for the reason that the challenge was not made until after the grand jurors were sworn and had returned the indictment, and that even though ground for a challenge exists, advantage of such frailty must be taken before the grand jurors are sworn. The People cite in support of this position, *Musick* v. *People,* 40 Ill. 268. While the opinion in that case contains language indicating such a rule, yet what was said was not necessary to the decision and may be treated as *obiter dictum.* The rule established by the more recent decisions is, that objection to the irregularity of the grand jury, either by challenge to the array or motion to quash the indictment on the ground of such irregularity, must be made in apt time. In *People* v. *Green,* 329 Ill. 576, it was held that where such motion was not made until after the defendant had pleaded, he is deemed to have waived his objection to the grand jury. The rule is there announced that objection to irregularities in the constitution of the grand jury is waived if not made in apt time. The application of the rule of apt time is tested by the question whether the defendant has pleaded to the indictment, and he may challenge the legality of the grand jury or of the indictment at any time before he pleads. To hold that he must challenge the array of the grand jury before that body is sworn would be to deny the benefit of such a challenge to one indicted by that grand jury but who had no previous notice that such indictment would be returned. The motion in this case was made in apt time. It was

based on the ground that the foreman and several other members of the grand jury were interested as depositors in this bank. Some of them were named and their interest shown. As we have observed, this bank was closed on September 6, 1928. The plaintiff in error was not indicted until November, 1929. It is evident this grand jury was drawn after the closing of the bank, and under the method of selecting a grand jury in force in counties of the size of Jo Daviess county it would have been a simple matter, and but a just proceeding, to have selected members of the grand jury from citizens not interested in this bank. The return of an indictment, however, is not evidence of guilt, and it has been held by this court that it is not ground for challenge to the array of a grand jury that it, or a portion of its members, had formed an opinion as to the guilt of the one against whom a presentment may be made. (*People* v. *Looney,* 314 Ill. 150; *People* v. *Duncan,* 261 id. 339; *People* v. *Bladek,* 259 id. 69.) Under the statute of this State (Smith's Stat. 1933, chap. 38, div. 11, sec. 5, p. 1100; Cahill's Stat. 1933, p. 1083;) a grand jury may, on the sworn testimony of one of its members or on presentment of information by two or more, return an indictment, and it was pointed out in *Musick* v. *People, supra,* that under this statute a grand jury cannot be challenged because some of the members thereof had formed and expressed an opinion of the guilt of the accused.

It is also argued that it was error to overrule plaintiff in error's motion to quash the indictment for the reason that the foreman of the grand jury did not endorse upon the indictment the name of one Justin Jager, a witness before the grand jury whose evidence was material. Eleven other names were endorsed thereon as of witnesses appearing before the grand jury. A copy of Jager's testimony before the grand jury was asked for and furnished February 12, 1930, and the transcript thereof was appended to the motion to quash the indictment. The trial of the case

did not begin until April 18, 1932. Jager was not used as a witness on the trial. Section 17 of the Jurors act, (Cahill's Stat. 1933, p. 1724,) so far as it affects this question, provides that it shall be the duty of the foreman of the grand jury to, "in each case in which a true bill shall be returned into court as aforesaid, note thereon the name or names of the witness or witnesses upon whose evidence the same shall have been found." This section has received the consideration of this court in cases where a motion has been made to quash the indictment and in each instance the statute has been held to be mandatory, though in none of the cases has the motion to quash been sustained. In *People* v. *Kingsbury,* 353 Ill. 11, on the hearing on motion to quash, it appeared that a witness whose name was not endorsed on the indictment, while appearing before the grand jury and testifying as to other complaints on which other indictments were returned, did not testify concerning the offense charged in the indictment before the court, and this court in that case held that as the names of eighteen other witnesses were endorsed on the back of the indictment, the presumption is, in the absence of showing to the contrary, that they were the witnesses, and the only witnesses, on whose evidence the indictment was found, and as there was no showing that the indictment in the case was based upon the evidence of the witness whose name was not endorsed on the indictment it was not error to overrule the motion to quash.

In *People* v. *Bladek, supra,* the question was whether an indictment should be quashed on motion where the wife of the accused was compelled to appear and testify before the grand jury. It was held that section 17 of the Jurors act is mandatory to the extent that the names of the witnesses upon whose evidence an indictment is to be returned are required to be endorsed thereon. In that case five persons other than the wife of the accused testified before the grand jury and the names of the six witnesses appeared

on the indictment. Beyond the reference to section 17 of the Jurors act the case is not applicable here, since the question was whether the compulsory testimony of this witness before the grand jury was sufficient ground for sustaining the motion to quash the indictment. It was held that as there were five other witnesses who testified before the grand jury, it will be presumed that the indictment was returned, at least in part, on their testimony.

In *Andrews* v. *People,* 117 Ill. 195, the indictment had endorsed thereon the names of five witnesses and bore also the endorsement, "We have other witnesses, officers Cosgrove and Palmer." The names of these officers appeared on the indictment. Motion was made to quash on the ground that the foreman of the grand jury did not note on the indictment the names of witnesses upon whose evidence the indictment was found, as required by statute. It was there held that the statute does not require that the names of all witnesses who shall be called to testify on the trial of the accused shall be noted on the indictment but the requirement is confined to the names of those upon whose evidence the indictment is found, and the presumption is, in the absence of any showing to the contrary, that the witnesses whose names were endorsed were the witnesses, and the only witnesses, upon whose evidence the indictment was found.

Counsel for plaintiff in error says that there is here a showing that the indictment was returned on the testimony of the witness Jager, whose name was not endorsed on the indictment. An examination of his testimony before the grand jury discloses that it was not of itself sufficient to support or justify the return of an indictment. He testified that he was connected with the State Auditor's office and closed the bank on the report of the condition as to the bank made to him. Concerning a list of notes held by the bank, he testified that if these notes were not good the bank was insolvent. He stated that he did not

know the value of the notes. He gave no testimony whatever as to the knowledge of plaintiff in error concerning the solvency or insolvency of the bank. All other matters connected with the investigation and included in his testimony were such as have been admitted throughout this record. Eleven other witnesses testified before the grand jury. Their names were endorsed on the indictment. As we have observed, Jager's testimony was furnished to the plaintiff in error more than a year before the trial. Jager was not used as a witness on the trial. The purpose of section 17 of the Jurors act is to apprise one accused by indictment, of the names of those appearing against him. This is not a case where the rights of the accused have been in any way prejudiced. As eleven other witnesses testified before the grand jury, it will be presumed that the indictment was returned on their testimony, in the absence of a showing to the contrary. (*People* v. *Bladek, supra; Andrews* v. *People, supra.*) It was not error to deny the motion to quash.

Counsel for plaintiff in error also urges·that the court erred in admitting incompetent evidence. Specifically, this complaint is that the court permitted hearsay testimony as to the value of the assets of the bank, and thus the insolvency of the bank was not properly proved. The indictment charges the bank was insolvent on September 6, 1928, and that plaintiff in error knew that fact and on that day received a deposit so knowing the bank to be insolvent. It was incumbent upon the People to prove both the insolvency of the bank and the knowledge of that fact on the part of the accused. *People* v. *Clark,* 329 Ill. 104; *People* v. *Belt,* 271 id. 342.

The principal evidence as to the condition of the bank was the testimony of W. S. Eaton, the receiver of the bank. He testified from an inventory furnished him by someone connected with the State Auditor's office. This witness, while on the stand, compared the items on the in-

ventory with the notes in the bank, but such notes were not introduced in evidence, and it is complained that this was secondary evidence as to the assets of the bank. It was admitted that the witness had in his possession many of the original notes, but they were not produced. His testimony concerning these notes was therefore hearsay and incompetent.

Other evidence admitted over the objection of plaintiff in error concerned the value of the ranch, located in the State of Colorado, known as the Bijou Valley Hog Farm, against which the bank held $51,000 in bonds. The bonded indebtedness was issued against 7160 acres of the land. The value of those bonds, and therefore the value of this ranch, was one of the important controverted questions in this case bearing on the solvency of the bank. It appears from the testimony that there was a prior mortgage against the land. Plaintiff in error testified that he knew nothing about this prior mortgage, and there is no contradiction of his testimony. He also testified that he had seen this property and that he had seen the appraisal of it by certain authorities of Colorado, showing the entire tract of 10,000 acres to be of a value of $462,000, and that he believed the property to be a good investment for the mortgage bonds. The receiver, however, was permitted to testify that a committee had gone out to investigate the value of this tract and had reported, and he testified as to what that report was. This was over the objection of counsel for plaintiff in error. This testimony was clearly incompetent as hearsay and bore heavily upon the questions of solvency of the bank and knowledge on the part of plaintiff in error that the bank was insolvent at the time the deposit was accepted. These were vital issues in the case. This error was strongly prejudicial.

Because of errors in receiving incompetent testimony it is in the interest of justice that a new trial be had in this case. The guilt of plaintiff in error is not so clearly shown

as to justify an affirmance of the judgment, notwithstanding errors committed.

Other errors are urged on this record which are not likely to appear on re-trial.

For the reasons given, the judgment is reversed and the cause remanded.          *Reversed and remanded.*