(No. 34481.—

The People of the State of Illinois, Defendant in Error, *vs.* John E. Smuk, Plaintiff in Error.

*Opinion filed November 20, 1957.*

Julius L. Sherwin and Theodore R. Sherwin, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, BRUCE E. KAUFMAN, L. LOUIS KARTON, and ROBERT W. SCHERMAN, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

On January 31, 1956, Dr. John E. Smuk, in the criminal court of Cook County, was found guilty by a jury, of abortion. The usual post-trial motions were overruled, whereupon the defendant was sentenced to the Illinois State Penitentiary for a term of not less than one year and a maximum term of five years. Writ of error lands the cause in this court for review.

The prosecution relied principally upon the testimony of Mary Karageorge to sustain the charge contained in a two-count indictment alleging that the defendant and one Catherine Heidman on January 28, 1954, did feloniously use certain instruments upon one Mary Karageorge, who was pregnant with a child, to produce abortion which was not necessary for the preservation of her life.

The prosecutrix testified that during the middle of January, 1954, she came to the defendant's office located at 1726 W. Chicago Avenue with a man and introduced themselves as Mr. and Mrs. Adams; she complained to the doctor that she had missed her October, November, and December menstrual periods and was apprehensive of pregnancy. The doctor's examination confirmed her suspicion. He gave her a card upon which was written the name Catherine Heidman, 435 W. 119th St., and instructed her to report at that address at 11:30 A.M. the following day. She reported at the address at the indicated hour but a reception room filled with young ladies caused a delay of more than an hour. Catherine Heidman was the nurse in charge. Mary told her that she now had six children and could not afford another. When she inquired about the fee she told Miss

Heidman that she only had $150. She paid this with a promise to pay another $50.

We will omit the unpleasant details of the alleged abortion performed by Dr. Smuk and his nurse. With the exception of her deviation from the truth in an effort to shield the putative father the story of the prosecutrix was convincing.

The mother did not recover from the operation promptly, so she contacted the police and State's Attorney's office. She was taken to the Bethany Hospital, where, under the care of Dr. Tucker, who testified for the State, she was discharged as well in about one week.

Under the direction of Patrick Egan and policewoman Fern Jackson, of the State's Attorney's office, Mary Karageorge returned to 435 W. 119th Street with five marked $10 bills. Soon after this money was delivered to Miss Heidman, the police officers came in, along with Miss Jackson who took the currency from the nurse.

The doctor testified that he was a native of Austria, 68 years old; that he had obtained his education after many interruptions and conquering divers obstacles; that he had served with honor three separate enlistments in the U. S. Army; that he had pursued the specialty of surgery; that he was assistant professor of surgery and surgical anatomy at Chicago Medical School for five years; that he has maintained his office at the present location for the practice of medicine for thirty years without a professional stain.

The doctor further testified that Mary Karageorge came to his office, introducing herself and escort as Mr. and Mrs. Adams; that the occasion for her visit was " 'Doctor, I came here to see if you have any practical nurse that you can recommend to us, because we have five children, and two of them is sick, and my husband and I working every day and I like to get the help of special nurse. If you have any, please recommend to us.' I told her to get in touch with Mrs. Catherine Heidman and wrote her name and

address down on a slip of paper." The defendant further testifying denied any discussion or examination pertaining to Mary's pregnancy and knew nothing about her abortion. The jury refused to believe this story.

The defendant assigns and argues many errors, but we will consider only one, since it is a serious one and demands a reversal. Fern Jackson, a police woman assigned to the State's Attorney's office, testified to the events and conversations that occurred at Catherine Heidman's home on February 1 when she was arrested. She was permitted over objection to testify to conversations out of the presence of the doctor. They were clearly hearsay and highly prejudicial. We will quote from the record.

"Mr. McGloon: Q. What did Catherine Heidman say?

A. Catherine Heidman said—

Mr. Crane: I object, if the court please. It's all outside the presence of the defendant.

The Court: Overruled.

The Witness: A. (Continuing)—she is a friend of mine. She's ill. I'm taking her temperature.

Mr. McGloon: Q. Anything else said?

A. Assistant State's Attorney Patrick Egan said, 'If she is ill, why didn't she go to a doctor?' Catherine Heidman said, 'The doctor has been called.'

Mr. Crane: The same objection, if the court please.

The Witness: Dr. Smuk has been called.

The Court: Overruled.

Q. Anything else said with reference to the money?

A. Yes, sir.

Q. What and by whom?

A. Assistant State's Attorney Egan said, 'Isn't it true that this money was given you by Mary as final payment for the bill she owed you?'

Mr. Crane: I object to that and—

Mr. McGloon: Q. Who did Egan—

Mr. Crane: Just a minute, let me get an objection in. Motion to strike the answer.

The Court: Overruled.

Mr. McGloon: Q. Who did Egan say that to?

A. Catherine Heidman.

Q. What did Catherine Heidman say in reply?

A. Catherine Heidman said, 'Mary didn't owe me any money. She owed it to Dr. Smuk.'

Mr. Crane: I object to that and ask that that be stricken.

The Court: Overruled.

Mr. McGloon: Q. Now, was there any conversation between Mrs. Heidman and anyone while you were in the operating room or surgical room,—

Mr. Crane: I object to that, if the court please.

Mr. McGloon: Q. (continuing)—with reference to anything that was in the room?

The Court: Overruled.

The Witness: A. Yes, sir.

Mr. McGloon: Q. What was said and by whom and to whom?

A. Mrs. Heidman said to Assistant State's Attorney Patrick Egan that the equipment in the room belonged to Dr. Smuk and that it could not be removed.

Q. Then what happened?

Mr. Crane: Motion to strike that answer, if the Court please.

The Court: Overruled."

The defendant denied that he was present at the Heidman home on the date in question; he denied that he performed the abortion; he denied that he owned the instruments; and he denied that he had any interest in the $50 paid to Mrs. Heidman by the prosecutrix. The hearsay testimony was contradictory of these denials, and permitting it to be received in evidence, with the unqualified sanction of the court's ruling, was highly prejudicial.

This defendant was granted a severance, and it was to avoid the impact of such testimony as the foregoing that it was deemed expedient that Catherine Heidman and Dr. Smuk have separate trials. We feel that the quantity and character of this highly prejudicial testimony warrants a new trial.

In *People* v. *Colegrove*, 342 Ill. 430, we said: "Declarations out of court or statements of any kind by a third person against the accused, made in his absence and without his knowledge, are inadmissible as evidence against him. The rule is elementary and a violation of it is a violation of the constitutional right of the accused that he shall not only be informed of the nature of the charge against him but be permitted to meet the accusing witness face to face. (*People* v. *Schallman*, 273 Ill. 564.)" See also *People* v. *Anderson*, 337 Ill. 310, 329-330; *People* v. *Ullrich*, 299 Ill. 250, 253-254; *People* v. *Ohle*, 408 Ill. 238, 241; *People* v. *Hammond*, 357 Ill. 182, 191; *People* v. *Thompson*, 341 Ill. 18, 21-22.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*