HELEN KIRKWOOD, by JOHN LEWIS KIRKWOOD, Admr. of the Estate of Helen Kirkwood, Deceased, *et al.*, Plaintiffs-Appellees, *v.* CHECKER TAXI COMPANY *et al.*, Defendants-Appellants.

ROBERT ARNOLD *et al.*, Plaintiffs-Appellees, *v.* CHECKER TAXI COMPANY, Defendant-Appellant.

(No. 56003; )

First District (5th Division)—May 18, 1973.

*Rehearing denied June 27, 1973.*

Peter Fitzpatrick, of Chicago, (Fitzpatrick & Gulbranson, and Jesmer & Harris, of counsel,) for appellants.

Shapiro, Kreisman & Epstein, of Chicago, (David S. Kreisman, of counsel,) for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

On December 29, 1964, a taxi owned by defendant Checker Taxi Company and operated by Edward Stoakley, in which plaintiff Helen Kirkwood, deceased at the time of trial, and her grandson Wayne Harris were passengers, was involved in a collision on Congress Street near Clark Street with an Oldsmobile driven by plaintiff Robert Arnold, in which plaintiff Willa Hairston was a passenger.

The suit brought by the taxi passengers was consolidated with the suit of the Oldsmobile occupants. In a jury trial verdicts were directed against defendants Checker and Stoakley on the issue of liability as to the taxi passengers and the jury assessed damages of $7250 to the Estate of Kirkwood and $200 to Wayne Harris, a minor. The jury also found against the defendants in the suit of the Oldsmobile occupants and

assessed damages of $700 to Robert Arnold and $600 to Willa Hairston. From the judgments entered on these verdicts defendants appeal.

Stoakley testified he was eastbound on Congress and intended to turn right at Clark but, before he started to turn and while he was in the second lane from the curb, his taxi was struck on the right side by Arnold's car which also was eastbound and had been in the curb lane. He testified that his taxi was at all times in the second lane and still there when the vehicles came to rest at which time the left front of the Oldsmobile was also in the second lane. Arnold testified that the taxi turned into his lane and struck the left side of his car and that he was always in the curb lane and was still in the curb lane when the vehicles came to rest with the right front of the taxi also in the curb lane at that time. Hairston, Arnold's passenger, also testified that the taxi turned into their lane of traffic. She didn't get out of the car to look at the vehicles afterwards. Police officer Partillo testified that when he arrived at the scene the Arnold car was in the curb lane and the right front fender of the taxi was also in the curb lane. All occurrence witnesses testified the vehicles moved after the impact and there was testimony from Arnold and Hairston of a second impact.

During the trial plaintiffs called Mrs. Billie Stratton to the stand and defendants objected because her name had not been provided in answers to interrogatories served five months prior on Arnold and Hairston. The trial judge allowed defendants' attorney a five minute interview with the witness after which she was allowed to testify over the objection of the defendants. She stated that she was the sister of Arnold and was in a car with three other persons which was travelling behind the Checker Taxi cab and she saw the taxi turn from the second lane and strike her brother's car which was in the curb lane. She testified to only one impact and that the vehicles moved to the right after that impact.

The defendants first allege the trial judge erred in allowing Mrs. Stratton, a surprise witness, to testify.

Supreme Court Rule 201(b)(1) provides "* * * a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action * * *." Rule 213(a) provides that "* * * a party may direct written interrogatories to any other party" and Rule 213(c) requires that within 28 days after service of the interrogatories on a party, he shall file a sworn answer or an objection to each interrogatory. Rule 219(c) provides that if a party unreasonably refuses to comply with the rules the court may enter such orders as are just including an order barring a witness fom testifying.

Plaintiffs contend that the trial judge correctly allowed the witness to

testify because where no compliance order was sought or obtained by defendants the failure to answer was not an "unreasonable refusal." We disagree with this contention.

■■ We believe it to be well established that there are a number of factors to be considered in determining whether the exclusion of a witness is an appropriate sanction to impose when her name has not been furnished. Among the factors our courts have considered are: the surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony and the good faith of the party calling the witness. *Carlson v. General Motors Corp.* (1972), 9 Ill.App.3d 606, 289 N.E.2d 439; *Buckler v. Sinclair Refining Co.* (1966), 68 Ill.App.2d 283, 216 N.E.2d 14.

In this case we note that Mrs. Stratton was the only non-party witness to the accident to testify. She was the sister of Arnold, worked in the same plant with him and she spoke to him at the scene of the accident so that it may reasonably be inferred that he knew she had some knowledge of the occurrence. It is also noted there were three other persons in the car with her who worked in the same plant and that they were the same three fellow workers Arnold had testified he saw at the scene of the accident. The failure to answer the interrogatories therefore failed to disclose not only the name of Mrs. Stratton, but also resulted in the non-disclosure of the names of her co-passengers prior to trial. Furthermore, the record discloses defendants were surprised and that a timely objection was made to the testimony of Mrs. Stratton. We believe her testimony was prejudicial because, she being the only non-party occurrence witness, it is reasonable to assume that the trial judge relied heavily on her testimony in directing the verdicts on the liability issue. Plaintiffs' lack of good faith is strongly indicated, not only because Arnold must have known Mrs. Stratton was a witness, but he would also have known that the other three occupants of her car, who were co-workers of Arnold and Hairston, must have had some knowledge of the occurrence. In addition, he failed to disclose and identify the pedestrian at the scene who wrote his name on a piece of paper which at the time of trial Arnold said was some place in his home.

In *Monier v. Chamberlain* (1966), 35 Ill.2d 351, 361, 221 N.E.2d 410, 417, the court stated that "ascertainment of truth and ultimate disposition of the lawsuit" is better served when parties are well educated as to their respective claims in advance of trial. See also *Drehle v. Fleming* (1970), 129 Ill.App.2d 166, 171, 263 N.E.2d 348, 350, where it was stated, "[T]he principle is now well established that the purposes of litigation

are best served when each party knows as much about the controversy as is reasonably practicable."

In the light of these principles and because the factors to be considered in determining sanctions weigh heavily in favor of her exclusion as a witness we do not believe that the five minute interview of Mrs. Stratton granted by the court was an adequate resolution of the interrogatory deficiencies. In *Rosales v. Marquez* (1965), 55 Ill.App.2d 203, 208, 204 N.E.2d 829, it was stated "an interview with a witness shortly before he takes the stand is not always a satisfactory substitute for a pretrial deposition. A deposition not only permits a thorough examination under oath but also provides a provable record that can be used for impeachment purposes: it may disclose facts that should be investigated, information that should be verified, leads to other witnesses that should be pursued * * *; it may also reveal data about the witness which would influence the selection of jurors."

■■ However, although a recess for deposition would often be a suitable sanction, we believe it would have been inappropriate here as the defendants would have required additional time to arrange to take the depositions of the three persons who were with Mrs. Stratton and whose names would have been revealed in her deposition as they were in her testimony. But the record does not disclose that the trial judge was made aware before Mrs. Stratton testified, either prior to or after the five minute interview, that she was an occurrence witness and a sister of Arnold or that there were three other probable witnesses with her. Had this information been given him, we believe the trial judge should have excluded the witness. However, since the appropriateness of sanctions is within his discretion (*Ferraro v. Augustine* (1964), 45 Ill.App.2d 295, 196 N.E.2d 16) and, inasmuch as the information had not been made known to him prior to his ruling on defendants' objection to Mrs. Stratton's testimony, we cannot say that he abused this discretion.

We consider next the contention that the court erred in directing the verdicts on the issue of liability against the defendants in the suit of the taxi passengers.

■■ The defendants Stoakley and Checker owed the taxi passengers a duty to use the highest degree of care consistent with the mode of conveyance in the practical operation thereof. (*Holderness v. Checker Taxi Co.* (1969), 105 Ill.App.2d 251, 245 N.E.2d 32.) However, they were not liable for injuries which result from a cause beyond their control. (*Baltes v. Checker Taxi Co.* (1960), 27 Ill.App.2d 298, 169 N.E.2d 596.) And, it is established that the mere fact of an accident which injures a passenger does not authorize a presumption that the carrier was

negligent. *Nilsson v. Checker Taxi Co.* (1972), 4 Ill.App.3d 718, 722, 281 N.E.2d 721.

Stoakley testified he was always in the second lane of traffic from the curb. Arnold, Hairston and Mrs. Stratton, sister of Arnold, testified that the taxi turned into the curb lane in which the Arnold car was travelling. Police officer Partillo testified that when he arrived the Arnold car was in the curb lane and the right front of the taxi was also in the right curb lane.

Stoakley also testified that a marked line appearing in a photograph (Arnold exhibit 1) was the dividing line between the curb and the second lane and that it showed the taxi north of the marked line and in the second lane of traffic with part of the Arnold car also in the second lane. Arnold couldn't say whether the marked line in this photograph was the dividing line between the two lanes but stated that he was always in the curb lane. Neither Hairston nor Mrs. Stratton were asked about this photograph. And officer Partillo couldn't tell whether the marked line in the photograph was the dividing line between the two lanes.

Defendants contend that if the jury believed the accident happened as Stoakley said, it could find them not liable and that the evidence was not so overwhelming, within the meaning of the *Pedrick* principle, so that a verdict in their favor could not stand. The plaintiffs contend that the court correctly applied the principle in directing the verdict for the taxi passengers.

■■ In *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, the court considered the question of when a trial judge may determine that the proof presents no factual question for the jury's consideration and it stated at p. 510:

> "In our judgment verdicts ought to be directed * * * only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based upon that evidence could ever stand."

*Pedrick* involved a train-car collision at a crossing protected by flasher warning signals. The only allegation of negligence was that the flasher signals were not operating. There was ambiguous testimony from the two plaintiffs and the third occupant of the car (she had a separate suit pending) in their testimony concerning whether the flashers were operating. Seven witnesses for the defendant testified positively that the flashers were operating, including two disinterested motorist witnesses, one driving a car towards the tracks from the opposite direction and the

other driving behind the plaintiffs' car. At p. 511 in *Pedrick* the court stated:

> "When the dubious probative value of the testimony of the plaintiffs and Hazel Lindsey is considered in the light of the unequivocal testimony by persons with no apparent interest in the outcome of this lawsuit and the corroborative testimony of the railroad employees, we believe it may fairly be said that all of the evidence, viewed most favorably to plaintiffs so overwhelmingly favors defendant that no contrary verdict based on this evidence could ever stand."

We believe that *Pedrick* keys on the equivocation of the testimony for the plaintiffs and the positiveness of the defense testimony particularly that of the distinterested witnesses.

In the instant case contrary to the testimony ambiguity in *Pedrick*, the testimony of Stoakley was positive that the taxi was always in the second lane. There was corroboration to some extent in the testimony concerning the photograph (Arnold exhibit 1) which, if believed, would indicate that the taxi was in the second lane. Plaintiffs' witnesses were also positive that the Arnold car was in the curb lane. The interest of Arnold and Hairston is obvious and Mrs. Stratton, a sister of Arnold, must also be considered an interested witness. We also note an inconsistency in the fact that the trial court did not direct a verdict as to liability in favor of Hairston.

■■ We are required by the *Pedrick* principle, to view the evidence in its aspect most favorable to the defendants. (*Gille v. County Housing Auth.* (1970), 44 Ill.2d 419, 255 N.E.2d 904.) We have done so and we conclude that the evidence does not so overwhelmingly favor the taxi passenger plaintiffs that a contrary verdict based on this evidence could not stand.

Accordingly, judgments entered in favor of the plaintiff John Lewis Kirkwood, Administrator of the Estate of Helen Kirkwood, and in favor of the plaintiff, Wayne Harris, a minor, are reversed and the cause remanded for new trial.

■■ We turn now to the defendants' contention that the judgments in favor of plaintiffs Arnold and Hairston should be reversed. They contend that by directing a verdict in favor of the other plaintiffs the court found that the defendants were negligent and, although the issues of liability and contributory negligence were submitted to the jury, as to Arnold and Hairston, that defendants were seriously prejudiced because the jury had already been informed that they were liable as to the other plaintiffs. The liability issue hinged on the question of which

vehicle crossed the lane dividing line and, by his finding of liability in the taxi passengers' case, the court, in effect, found that the taxi had crossed the center line and struck the car. In the face of this direction the jury was not likely to find in the case of Arnold and Hairston that the taxi did not cross over the center line. We believe that the question of defendants' negligence should have been presented to the jury unfettered by the court's direction of liability in the consolidated case.

Accordingly, the judgments entered in favor of the plaintiff Robert Arnold and in favor of the plaintiff Willa Hairston are reversed and the cause remanded for new trial.

Inasmuch as this consolidated case is remanded for new trial, it will not be necessary to consider defendants' remaining contentions which complain of rulings of the trial judge.

Reversed and remanded.

DRUCKER, P. J., and ENGLISH, J., concur.