MICHAEL F. McCOY, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF HANOVER PARK, Defendant-Appellant.

First District (1st Division)   No. 77-245

Opinion filed October 24, 1977.

Samelson & Knickerbocker, of Des Plaines (Paul E. Hamer, of counsel), for appellant.

Allan J. Marco, of Marco and Mannina, of Downers Grove, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Michael F. McCoy (plaintiff), a police officer of the Village of Hanover Park, was tried before the Board of Fire and Police Commissioners of the Village (defendant), and found guilty of conduct unbecoming a member of the police department in that he committed aggravated battery upon Lynne G. Brown. The defendant removed him from his position. Plaintiff

filed proceedings for administrative review. The trial court found that Mrs. Brown's testimony was "inherently untrustworthy, incredible and unreliable." The court accordingly reversed the finding and order of defendant as being contrary to the manifest weight of the evidence. Defendant has appealed.

In this court, defendant urges that the duty of determining credibility of witnesses and weighing the evidence rested upon the administrative agency rather than upon the reviewing court; the findings of the administrative agency are prima facie correct and the sufficiency of cause for discharge was a matter to be determined by the agency. Plaintiff responds that a reviewing court may rule that testimony is so inherently untrustworthy as to be insufficient to sustain the burden of proof in an administrative hearing; a discharge must be based upon the specific charges and the findings of the commission; and that plaintiff as a public employee was denied basic rights of due process and equal protection.

■■ The first two issues raised by defendant are hardly arguable. The Administrative Review Act specifically finds that, "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1975, ch. 110, par. 274.) The first duty of a reviewing court in a case involving the findings of an administrative agency is to "determine if the agency applied the proper test to the evidence presented to it * * *." (*General Electric Co. v. Illinois Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 977, 349 N.E.2d 553, *appeal denied* (1976), 63 Ill. 2d 556, citing *Western Illinois Power Cooperative, Inc. v. Property Tax Appeal Board* (1975), 29 Ill. App. 3d 16, 331 N.E.2d 286.) However, this court is also charged with the duty of determining whether the agency decision was contrary to the manifest weight of the evidence. The pertinent authorities are cited and the principle clearly established in *Kerr v. Police Board of Chicago* (1974), 59 Ill. 2d 140, 319 N.E.2d 478. In our opinion, the central issue here is application of the manifest weight of the evidence rule to the evidence in the record.

The written charge against plaintiff is that he caused great bodily harm to Mrs. Brown by striking her about the face and body contrary to Rule 3 of the rules and regulations of defendant. Rule 3 proscribes conduct unbecoming a member of the police department. The defendant found that plaintiff conducted himself in a manner unbecoming an officer in that he committed an aggravated battery causing great bodily harm to Mrs. Brown by striking her on the face and body with his hands and fists and by throwing an automatic pistol at and against her face. We will limit our discussion of the evidence to this charge and finding.

As our summary of the evidence will show, Mrs. Brown was the only occurrence witness against plaintiff. She had made a written statement to

the police department the evening after the occurrence and she later testified before a grand jury. The summary will reflect the use of these statements at the administrative hearing. We will add that plaintiff was indicted for aggravated battery and found not guilty.

Lynne Brown testified that she arrived home at approximately 2 o'clock on the morning of October 25, 1974. She had been out drinking for a number of hours with a friend, Orrin Dressler. She found plaintiff asleep on her living room sofa. She had known the plaintiff for about a year and they had been living together for part of that time. Her two children were asleep upstairs. The plaintiff awoke and asked Mrs. Brown what had happened. It appeared to her that he had been drinking also. The two began a shouting match wherein the plaintiff admitted that he had entertained two female visitors at the witness' home that evening.

At this point, the witness commenced to refresh her recollection by reading a statement she had written for the Village police at 8 o'clock the evening of October 25, 1974. She then testified that the plaintiff threw her to the floor although she was unable to recall if he had done this twice as noted in her statement. She also testified that she sat on the sofa and the plaintiff "pitched" his gun at her. The gun struck her in the face, hitting her right cheekbone and possibly her nose. She was unable to remember which portions of the gun struck her face. She admitted that "according to [her handwritten] statement" the barrel hit her nose and the handle hit her cheek. The witness also testified that the marks subsequently seen on her nose could have been caused by cold sores.

She further testified that her face began bleeding and she applied a towel. The plaintiff offered to take her to the hospital. When she refused to go, he spoke to Mr. Dressler on the telephone. The witness could not remember if she herself had dialed the number. She could not remember if plaintiff had pulled her hair or punched her in the stomach. She testified, however, that these allegations were contained in her statement. She then testified that she and plaintiff left the house in her car, either to go to the hospital or to see Mr. Dressler.

At this point in the direct examination, at the request of the attorney for the Board, the Board declared Mrs. Brown a hostile witness. Counsel for defendant then proceeded to cross-examine her. He repeatedly asked leading questions drawn extensively from her statement to the police. She then testified that the plaintiff was in the driver's seat. At one point he struck her on the left side of her face with his right hand. Shortly thereafter the plaintiff turned the car around and they returned to Mrs. Brown's home. It was then about 4 a.m. The witness then spoke to Mr. Dressler on the telephone but could not remember whether she or the plaintiff had placed the call. At about 5 a.m. the witness and plaintiff went to bed together.

The plaintiff left the Brown residence at 7 o'clock on the morning of October 25, 1974. Mrs. Brown telephoned Mrs. Thomazine Clum, a neighbor, asking her to come over. During Mrs. Clum's visit, the plaintiff reappeared for a short while but the witness was unable to recall their conversation. She and Mrs. Clum then drove to the Hanover Park Police Station. Mrs. Brown gave the plaintiff's gun to the police, had photographs taken of her face, was examined by a police matron, and was taken to the State's Attorney's office where she spoke to an investigator. She was taken to the Central Du Page Hospital emergency room and returned to the Du Page County Courthouse where she signed a complaint against plaintiff. She and the Hanover Park police officers then returned to the police station where she wrote out the handwritten statement discussed above. She finally returned home at 9:30 p.m.

On cross-examination, Mrs. Brown testified that as the plaintiff pitched the gun at her he said, "Here, catch." The witness admitted that it was possible she had 20 drinks with Mr. Dressler on October 24, 1974. She stated that she had been taking medication for a kidney infection and that sometimes she hallucinated when she combined this medication with drinking. She said it was possible she had taken the medication that evening while with Mr. Dressler. She noted again that the marks on the right side of her nose could have been caused by a cold sore.

The witness also testified that possibly when she arrived home at 2 a.m. she struck out at the plaintiff, he might have been trying to restrain her, and she might have fallen upon a broken couch. She admitted testifying before a grand jury that when she arrived home she first went upstairs, took two Empirin compound tablets with codeine, and waited for the medication to take effect before returning to the living room. She also recalled telling the grand jury that her memory of the incident was "hazy" and that "it was difficult" for her to remember how she had received her facial bruises, although she might have tripped over the sofa.

In response to questioning by members of the Board, Mrs. Brown stated that she and the plaintiff were planning to be married and that she had requested the Board to drop the proceedings. She also repeated that perhaps she had fallen on the couch.

Plaintiff, a member of the Village police force for five years, testified that he had watched Mrs. Brown's children throughout the day of October 24, 1974. He had entertained two of his female friends in her home for a few hours. He then fell asleep on the living room sofa. He was awakened when Mrs. Brown started screaming and throwing things at him. He stated that she began slapping him and that he tried to restrain her. She tripped and fell on a wooden arm of the sofa. Her face struck the arm which had an ornamental piece shaped like an acorn. He helped her up. He noticed that her face was bleeding and called Mr. Dressler,

requesting that this individual either take Mrs. Brown to the hospital or watch the children. Mrs. Brown ran from the home. Plaintiff followed her outside. She again began swinging at him and, as he attempted to restrain her, she fell to the sidewalk on her back.

Plaintiff then put Mrs. Brown in her car and he drove towards the hospital. However, he and Mrs. Brown returned to her home. After a short time, the two went to bed together.

Plaintiff specifically denied throwing his gun at Mrs. Brown, throwing her around the room or striking her. He also denied striking Mrs. Brown during the car ride.

On cross-examination plaintiff stated that he had only touched Mrs. Brown that evening in self-defense. He also noted that he and Mrs. Brown were planning to be married.

Mrs. Thomazine Clum testified that she received a telephone call from Mrs. Brown at 7:55 a.m. on October 25, 1974. She immediately went to the Brown residence, where she encountered plaintiff. He stated that he and Mrs. Brown had another fight during which he had lost his temper. Mrs. Clum noted that Mrs. Brown had facial bruises. She also heard plaintiff tell Mrs. Brown she "deserved it." Mrs. Clum later accompanied Mrs. Brown to the police station.

Officer Leo Siciliano of the Village police department stated that when he observed Mrs. Brown at 9:36 a.m. on October 25, 1974, she had several marks and bruises on her face and arms. Mrs. Brown gave him plaintiff's gun and told him plaintiff had beaten her. The officer observed a broken knob on the living room sofa, noted that the room was somewhat "messed," and took Mrs. Brown's bloodstained sweater, blouse and towel.

On cross-examination, Officer Siciliano stated that no tests were taken to see if there were hairs or blood on the plaintiff's gun. In response to questioning by the members of the Board, Officer Siciliano stated that the broken sofa knob was never tested for blood or skin.

Mrs. Alene Doherty, the police matron, stated that she examined Mrs. Brown at 10 o'clock the morning of October 25, 1974. Mrs. Brown had fresh bruises on the back of her neck and several small bruises on the outer and inner parts of each arm, which Mrs. Doherty stated could have been caused by finger marks. Mrs. Brown also had a bruise in the pelvic area and several facial bruises.

It is apparent from the above analysis that the testimony of Lynne Brown given under oath at the hearing before defendant is, standing alone aside from her responses to leading questions based upon her statement, quite insufficient to prove the charges against plaintiff by a preponderance of the evidence. This is particularly true in view of the clear denial made by plaintiff and the lack of direct corroboration of plaintiff's guilt by any other witness. Consequently it seems clear that the

purpose of counsel for the defendant in requesting that Lynne Brown be treated as a hostile witness was in some manner to bring before the Board the statement which the witness made to the police. This was a thinly veiled effort to introduce the hearsay statement as substantive evidence.

■■■ Examination of the law in this regard leads to the conclusion that evidence of a prior statement made by a witness inconsistent with his testimony given in open court is admissible to impeach credibility but the statement in itself is not proper as substantive evidence. (*Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 520, 354 N.E.2d 381; *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 384, 329 N.E.2d 815, *appeal denied* (1975), 60 Ill. 2d 597.) To state the matter otherwise, our courts have unqualifiedly rejected the practice of using impeachment of a hostile witness by means of contrary statements "merely as a device for placing before the jury under the guise of impeachment a prior statement made by the witness." (41 Ill. App. 3d 506, 516.) The identical principle has been strongly adhered to in the trial of criminal cases. The Supreme Court of Illinois has consistently held that prior out-of-court statements of witnesses are not competent as evidence for substantive use. *People v. Gant* (1974), 58 Ill. 2d 178, 183, 317 N.E.2d 564, and the many authorities there cited.

■■ We conclude that the statement made by Mrs. Brown was not competent, substantive evidence against plaintiff. Eliminating consideration of the statement for this purpose, her testimony before the Board was insufficient to support the charges against defendant. If her extrajudicial statements are given their proper legal effect of impeachment of her testimony before the Board, it follows necessarily that her testimony is completely negated and virtually destroyed to such an extent that the result reached by the Board was contrary to the manifest weight of the evidence. In this regard the many authorities cited by diligent counsel for defendant which deal with issues of credibility are not pertinent here. We therefore reach the conclusion that the result arrived at by the trial court was proper and that the decision reached by the defendant Board was contrary to the manifest weight of the evidence. The judgment appealed from is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.