THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IGNACIO ROSARIO, Defendant-Appellant.

First District (5th Division)   No. 77-1649

Opinion filed September 15, 1978.

Driscoll & DeJohn, of Chicago (Nicholas A. DeJohn, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and J. Jonathan Regunberg, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial defendant was convicted of murder, attempt armed robbery and conspiracy to commit armed robbery and murder. He was sentenced to terms of 20 to 50 years for murder, and 4 to 12 years for attempt armed robbery with no sentence given for conspiracy. On appeal he contends that the verdict was the product of cumulative errors rather than by proof beyond a reasonable doubt.

It appears that shortly after midnight on an evening in February 1976, three masked men entered the Trackside Lounge and one of them announced a "stickup." At this point William Heaton, the tavern owner, ran into an adjoining room to press the burglar alarm. While there he heard gunfire and upon his return noticed that the three men had left; that Donald Wells was lying on the floor with a chest wound; and that there was a hole in the front door of the lounge.

The State's testimony also established that the masks of the three men were made from bedsheets, that the smallest of the men was carrying a rifle, that Donald Wells started toward them with a cue stick in his hand, and that Wells was shot by the rifle carrier after which the men fled.

The key witness for the State was 16-year-old Eugene Hernandez, an

admitted heroin user who testified that defendant came to his apartment at 6:30 that evening carrying a 30-30 carbine rifle and asked Hernandez to keep the rifle for him but before giving up the weapon, defendant fired a shot in the air from the back porch of the apartment; that later in the evening Peter Gonzales, Rufino Santiago, defendant and his brother, Rafeal Rosario, were in the apartment (where Hernandez lived with Iris Nieves and their three children); and that Santiago suggested "sticking up" the Trackside Lounge which was located about a block away. Santiago and defendant left to look over the tavern and when they returned shortly afterwards, all five of the men made masks for use in the planned robbery. When Gonzales, Santiago and Hernandez each refused a request of defendant to carry the rifle, he handed it to Rafeal and told him to carry it. The five men left the apartment wearing the masks and went to the lounge where defendant kicked open the door and Rafeal, who was carrying the rifle, announced a robbery. They were standing in the doorway but had not entered when a man inside came toward them carrying a pool cue stick and closed the door, at which point defendant said, "cap, cap" (cap is a Spanish word for shoot) and Rafeal then fired a shot through the door and all five of them ran from the scene.

When he, Rafeal and defendant arrived in front of his apartment, defendant made a statement that some Young Lords were in a car that was passing at that time, and Rafeal fired two shots at the car. They all eventually returned to the apartment, where they gave their masks to Iris who was told to hide them, and one of the men put the rifle under a crib mattress.

Iris Nieves testified that the five men were in the apartment early that evening and all left wearing masks with Rafeal carrying a rifle. Later she heard two shots fired in front of her house and soon afterwards the five men returned with two other men named Lerch and Garcia. She hid the masks in her fireplace.

Police officers testified to finding a .30-caliber shell casing in front of the tavern, two similar casings on the street in front of the apartment and another on the back porch. Admitted in evidence was a rifle found by another officer in a car driven by defendant and it was established that the three shell casings were fired from that rifle, but the bullet causing the death of Wells was unsuitable for a ballistics comparison.

OPINION

Defendant asserts that his identification as a participant in the offenses was predicated primarily on the testimony of Hernandez, and he maintains that because of improper bolstering of the credibility of Hernandez, the jury's verdict was not based on proof beyond a reasonable doubt.

He first argues that error was committed when Hernandez was permitted to testify that he had given a statement shortly after his arrest which corroborated his trial testimony.

■■ Generally, a witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at trial relative to the same subject matter. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113.) But where it is charged that his story is a recent fabrication or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible. *People v. Powell; People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.

■■ On direct examination Hernandez testified that some two months after his arrest he agreed to testify on behalf of the State in return for his release from jail and a dismissal of the charges against him. On cross-examination Hernandez answered that at the time of his arrest he was a heroin user and that he had no heroin during his two months in jail prior to his release. On redirect, over defense counsel's objections, he was permitted to state that he gave a statement to the police on the day of his arrest which was substantially the same as his testimony given at trial. We see no error in the admission of this testimony.

Defense counsel by his cross-examination implied that defendant was a heroin user when arrested and that his testimony was fabricated two months later in order to gain his release so that he could indulge his heroin habit. Although the State had initially elicited from Hernandez that he had agreed to testify truthfully to obtain his release and a dismissal of the charges, defense counsel's interrogation concerning his heroin use and the fact that the drug was not available in jail suggested a motive for the witness to testify falsely, thus permitting the State to introduce a prior consistent statement to refute this inference of fabrication. See *People v. Powell; People v. Clark.*

Defendant next argues that the testimony of Hernandez concerning his participation in a shooting at a passing automobile after the robbery should have been excluded. We reject this argument for the following reasons:

■■ First, defendant failed to object to this testimony and thus did not preserve the issue. *People v. Murphy* (1977), 47 Ill. App. 3d 278, 361 N.E.2d 842; *People v. Stallcup* (1973), 10 Ill. App. 3d 153, 294 N.E.2d 21.

Second, although evidence of other crimes by a defendant is generally inadmissible when independent of or disconnected from the crime charged (*People v. Cage* (1966), 34 Ill. 2d 530, 533, 216 N.E.2d 805, 806), there are exceptions to the rule, including situations where the evidence aids in establishing identity, tends to prove design, motive, knowledge or

*modus operandi* (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489), or "is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried." *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, 349, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.

■ In the instant case the testimony of Hernandez that Rafeal had shot at the passing car when defendant said that Young Lords were in it demonstrated defendant's involvement in the use of the rifle in the same manner that it was used in the tavern, namely that Rafeal had fired it after defendant had said something to him. (See *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) The testimony concerning the shooting at the car also established defendant's presence immediately after and within one block of the crime with other participants and, in addition, was somewhat corroborative of and by the testimony of Iris Nieves that she heard two shots outside her house shortly before defendant entered the house through the front door with Hernandez and Rafeal, who was carrying a rifle.

■ Defendant also argues that evidence of the shooting should have been excluded because the reference to the Young Lords being in the car was highly prejudicial in that it was a veiled inference of gang membership and the rivalries associated therewith. In this regard we note that in *People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448, 450, the court stated, "[T]he actual need for the evidence [of other crimes] must be considered in light of the relevant issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect its admission will have on the jury." Here the only testimony reference to Young Lords was during the direct examination of Hernandez, who testified that just before Rafeal fired the gun at the car defendant said that the "Y. L. O." were in the car and when asked what the initials stood for, Hernandez answered "Young Lords Organization." We see no merit in defendant's argument that prejudicial error resulted from this answer not only because an objection was not made to it but considering the totality of the evidence which will be subsequently discussed in this opinion we believe the reference had minimal, if any, effect on the jury's verdict and any error that might be ascribed to it would be harmless beyond a reasonable doubt.

Defendant also maintains that the State improperly brought out the fact that he and Rafeal were brothers. It appears that the prosecutor asked a question of Hernandez as to any family relationship between Rafeal and defendant. An objection was sustained but later the following colloquy took place between the prosecutor and Hernandez:

"Q Did the defendant say something again?
A Yes.

Q What was that?

A Told Rafeal to carry it [the rifle].

Q Told his younger brother to carry it."

■█ ■ The court sustained an objection and after telling the jurors "to erase the question from your minds and not in any way to consider it" the jurors then responded to the court's question that they would do so. Defendant suggests that the prosecutor's comment inferred that Rafeal was controlled by him, as his older brother, and thus that defendant "was more than likely involved in the shooting because of his family relationship with Rafeal Rosario" and the injection of the relationship in the manner stated constituted hearsay and was improper. However, in this regard we are also of the belief that the statement of the relationship was not so prejudicial as to have any effect on the outcome of the case. Considering that Rafeal accepted the rifle from defendant after the others had refused it, that each was named Rosario and that both were involved in the planning and the crime, it appears that the jury reasonably would have inferred some relationship. Moreover, we believe that any error was substantially diluted by the competent action of the trial court in sustaining an objection thereto and in instructing the jury to disregard and strike it from their minds, which the jurors agreed to do.

Finally, we note our disagreement with the contention of defendant that defendant's guilt was not proven beyond a reasonable doubt. It is well established that a jury's verdict will not be disturbed unless it is found to be palpably contrary to the evidence or so unsatisfactory as to justify a reasonable doubt of guilt. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Further, while accomplice testimony is to be viewed with caution and suspicion, a conviction may be had on his testimony alone, if it was credible. *People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665; *People v. Crane* (1976), 34 Ill. App. 3d 850, 341 N.E.2d 97.

Here, in addition to his testimony as stated above, Hernandez also testified that defendant brought the rifle to his apartment; that he, defendant, Gonzales, Santiago and Rafeal Rosario discussed and planned the robbery; that after they decided to rob the tavern, defendant and Santiago went there to check it out; that defendant told the others to make masks and made one for himself; that defendant gave his rifle to Rafeal; that defendant held the door of the lounge open during the attempted robbery; and that defendant told Rafeal to shoot after a bar patron had closed the door of the lounge.

■█ Furthermore, the jury had before it more than the bare testimony of Hernandez. The other witnesses and certain physical evidence corroborated Hernandez on material points of his testimony. Iris Nieves

testified that on the evening in question defendant, Gonzales, Santiago, Rafeal Rosario and Hernandez were in the apartment with her; that defendant and Santiago left the apartment and returned five minutes later; that the five made masks; that they all left the apartment together; that about 15 minutes after they left she heard gunshots in the front of her building; and that moments later the five men returned and gave her their masks which she hid behind the fireplace. The owner of the lounge and a patron both testified that men wearing masks opened the door and announced a stickup. The patron also testified that the men retreated when Donald Walls approached them with a pool cue stick and that Walls was then shot in the chest. Police officers testified to the recovery of a .30 caliber shell casing on the sidewalk in front of the tavern and similar casings on the street in front of the apartment and on the stairwell landing to its rear door, and defendant stipulated to the opinion of a ballistics expert that the three spent shell casings were fired from the rifle which was later found in a car driven by defendant.

In the light thereof, even were we to exclude consideration of the testimony concerning the shooting at the automobile, the reference to the Young Lords and the statement as to the family relationship between defendant and Rafeal, we do not find the evidence to be so unsatisfactory as to create a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.