THE PEOPLE *ex rel.* BEVERLY ASHFORD, Plaintiff-Appellant, *v.* WILLIAM ZIEMANN, Defendant-Appellee.

First District (2nd Division) No. 81—858

Opinion filed October 26, 1982.

STAMOS, P.J., dissenting.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Nancy Kay Donnellan, and Barbara M. Wheeler, Assistant State's Attorneys, of counsel), for the People.

William P. O'Malley, of Chicago, for appellee.

JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Beverly Ashford brought an action pursuant to the Paternity Act (Ill. Rev. Stat. 1979, ch. 40, par. 1351 et seq.) to have defendant William Ziemann declared to be the father of her daughter, born September 5, 1978.[1] Following a jury verdict of nonpaternity,

---

[1]The name of the infant daughter is in the record but not used in this opinion.

plaintiff appeals, contending that: (1) the trial court erred in refusing to admit the daughter's birth certificate into evidence; (2) the trial court should have excluded the testimony of one of the defense witnesses; (3) remarks made by defense counsel in closing argument were so prejudicial as to require reversal; and (4) the verdict was against the manifest weight of the evidence.

Plaintiff Beverly Ashford and defendant William Ziemann have known each other since 1965. Both parties agree that during the early years of their relationship they dated steadily and had sexual relations frequently. During the 1970's the parties saw each other sporadically. Plaintiff had not seen defendant for some time when, on December 10, 1977, she and her roommate were walking down the street on their way to buy a Christmas tree and saw defendant coming out of an alley in his car. Plaintiff testified that defendant offered to help them get the tree but said that he had to go to work first. Defendant, a detective for the Chicago police department, said that he would take the two women home, check into work, and return to take them shopping later. Defendant came to plaintiff's apartment that evening in an unmarked police car and took the two women to buy a tree. After bringing the tree back to plaintiff's apartment, plaintiff and defendant went out for a drink and then to defendant's apartment. Defendant left plaintiff there while he returned to work to check out. When he returned, they had intercourse "a couple of times" before going to sleep, and again in the morning. Plaintiff testified that the parties engaged in sexual intercourse on December 17, 1977, and on January 20, 1978, and also on New Year's Eve, December 31, 1977, each time at defendant's apartment. It was on New Year's Eve that plaintiff first told defendant that she thought she was pregnant. During January of 1978, the parties also had dinner at plaintiff's apartment twice. On both occasions defendant was on duty as a police officer. Plaintiff's roommate testified that she was present during those dinners and at some of the times when defendant picked plaintiff up to take her to his apartment. After January 1978, the parties did not communicate for several months. In the summer of 1978, plaintiff called defendant to discuss their responsibilities to the unborn child. Defendant told her that the child was not his responsibility and that she should get a lawyer.

Plaintiff also testified that her last menstrual period was on November 28, 1977, and that she had not dated anyone except defendant since 1976.

Defendant testified that he dated plaintiff between 1965 and 1969 and that after they stopped dating they maintained a friendly rela-

tionship. He stated that he did help plaintiff and her roommate with their Christmas tree in early December of 1977, but could not recall the exact date and stated that they picked up the tree in his personal car and he did not take plaintiff to his apartment that day. Defendant also testified that plaintiff was at his apartment on one occasion, which may have been New Year's Eve, and he drove her home late that night. Defendant denied having intercourse with plaintiff during December of 1977 or January of 1978. Defendant went to plaintiff's apartment several times in early 1978 to help her with her car. He stated that they had discussed her pregnancy and that she implied that he was the father of the child. Defendant testified that plaintiff had talked about marriage often in the late 1960's, and once had asked him if he would marry her if he was still single when he was 35.

James Storz was the only other witness called by the defense. His existence was revealed to plaintiff's counsel during the jury conference after the bulk of plaintiff's case in chief had been presented. He was first interviewed by defense counsel during trial and was deposed by plaintiff's counsel the day before he was called as a witness. Storz testified that he is a bartender who has worked in several taverns in plaintiff's neighborhood. He first met plaintiff in the summer of 1977 while he was working. Between then and November of 1977, he encountered plaintiff several times and they had drinks together each time. During the weekend before Thanksgiving 1977, he met plaintiff at a bar where they stayed for several hours. They then went to his apartment where they had intercourse. He met plaintiff by chance in the neighborhood twice during December of 1977, and on one of these occasions they went to his apartment and had intercourse. Storz met plaintiff again in January of 1978. She told him that she was pregnant and they discussed an abortion and the possibility of giving the baby up for adoption. Plaintiff rejected both suggestions. Storz did not see plaintiff again until the trial. On cross-examination, Storz was asked to describe plaintiff. He stated that she was five feet six inches tall, weighed 150 pounds and has brown eyes, "shapely" legs, and no scars or identifying marks. He also stated that she drank scotch and water or scotch on the rocks.

Plaintiff testified as a rebuttal witness. She stated that she had never seen Storz before he walked into the courtroom. She also said that she is five feet two inches tall, weighs 105 pounds, has blue eyes, has noticeable scars and birthmarks and that one of her legs is shorter and thinner than the other as a result of childhood polio. She also stated that she drinks nothing but beer or spritzer and that she

did not frequent the bars where Storz claimed to have met her.

I

We first consider plaintiff's contention that the trial court erred in refusing to admit the daughter's birth certificate into evidence. A certificate of live birth of plaintiff's daughter signed by Stuart Abel, M.D., was received by the Chicago department of health on September 15, 1978. The birth certificate listed the child's name, date and time of birth, sex, and place of birth. The certificate also listed the name, address, age, and place of birth of plaintiff, the mother. The certificate contained the age (37) and place of birth (Illinois) of the father, but the father's name was not included, in accordance with section 12(4) of the Vital Records Act (Ill. Rev. Stat. 1981, ch. 111½, par. 73—12(4)), which states:

"(4) If the mother was not married to the father of the child either at the time of conception or birth, the name of the father shall not be entered on the certificate of birth without the written consent of the mother and the person to be named as the father unless a determination of paternity has been made by a court of competent jurisdiction, in which case the name of the father as determined by the court shall be entered."

Plaintiff, who signed the live birth certificate, identified a certified copy of it during her testimony in her case in chief. Also in plaintiff's case in chief, defendant was called as an adverse witness and asked his date of birth and place of birth. Plaintiff then sought admission of the birth certificate into evidence. Upon defendant's objection, the trial court denied admission, stating:

"In this case, my ruling is that it will be denied. The law is very clear that you cannot insert the name of the alleged father without his consent. I am not going to permit by innuendo now that she put the defendant on the stand and identified him as being age 37 and living in the City of Chicago. That's my ruling."

We believe that the birth certificate constituted relevant and proper evidence, and that the trial court erred in refusing its admission. An essential element of a paternity case is proof of a "child born out of wedlock." (Ill. Rev. Stat. 1981, ch. 40, par. 1351 *et seq.*) This birth certificate, with the father's name not entered, was probative of the fact that a child was born out of wedlock. Thus, the birth certificate was relevant evidence.

We next address the potential hearsay objection to the birth certificate, and find it not valid for two reasons. Initially, we

conclude that the certificate was not hearsay, because the out-of-court declarations were those of plaintiff and she testified at trial and was subject to cross-examination by the defendant against whom the exhibit is offered. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 120-22, 190 N.E.2d 738.) This case is not a situation in which an attempt is made to introduce testimony by a third person, nor is there any issue of the remoteness of the declaration; rather, we are dealing with a certificate of live birth signed by the plaintiff who testified and was subject to cross-examination. (See *People v. Osborn* (1977), 53 Ill. App. 3d 312, 319, 368 N.E.2d 608; *People v. Clark* (1972), 52 Ill. 2d 374, 388-89, 288 N.E.2d 363; 2 Gard, Illinois Evidence Manual sec. 14.09, at 72-73 (2d ed. 1979).) Alternatively, if the birth certificate was hearsay, it was admissible because of the exception to the hearsay rule for records of vital statistics. Fed. R. Evid. 803(9); McCormick, Evidence sec. 316, at 736 (2d ed. 1972); Cleary & Graham, Handbook of Illinois Evidence sec. 803.14, at 450 (3d ed. 1979).

 It might also be noted that this relevant evidence corroborates plaintiff's testimony as a prior consistent statement. By contesting the paternity action, defendant challenges the veracity of plaintiff's testimony. Under such circumstance, the evidence is admissible. See Cleary & Graham, Handbook of Illinois Evidence sec. 611.14, at 319-20 (3d ed. 1979); McCormick, Evidence sec. 251, at 604 (2d ed. 1972); 2 Gard, Illinois Evidence Manual sec. 14.09, at 71 (2d ed. 1979); Fed. R. Evid. 801; *People v. Clark* (1972), 52 Ill. 2d 374, 382; *People v. Rosario* (1978), 65 Ill. App. 3d 170, 174, 382 N.E.2d 31.

 The trial court apparently excluded the birth certificate because of prejudice to defendant. We disagree and find that any prejudice to defendant is outweighed by the probative value of the birth certificate. Of course in any paternity action, there may be evidence prejudicial to the defendant. If we understand the trial court, it might never be possible to complete a birth certificate pursuant to section 12(4) of the Vital Records Act (Ill. Rev. Stat. 1981, ch. 111½, par. 73—12(4)). That plaintiff listed the age of the father as 37 and his place of birth as Illinois at the time of completing the certificate in September 1978 is probative in this paternity action.

## II

We next consider plaintiff's contention that the trial court erred in refusing to exclude James Storz from testifying as a sanction for defendant's violation of the discovery rules. On January 31, 1979, plaintiff propounded a set of interrogatories to defendant, which included a request for disclosure of the existence of any other men that

defendant contended had intercourse with plaintiff. Despite the filing by plaintiff of two motions to compel the answer of these interrogatories, defendant never filed an answer.

On January 13, 1981, plaintiff moved to set the case for trial, alleging that discovery was complete. On Monday, March 9, 1981, the date scheduled to commence trial, defendant requested a continuance until the next day. On March 10, at the start of the trial, defendant told the court that he would have one *or two* witnesses. At the conclusion of the proceedings on that date, defendant advised the court he would put defendant on the stand *plus one more witness*. On Wednesday, March 11, before trial commenced, defendant advised the court and plaintiff about James Storz. Apparently the notification took place in the court's chambers out of the presence of a court reporter.[2] Based upon the record before us the following facts emerge: (1) the court said defendant's counsel stated he did not know anything about this witness until a week ago (March 4); (2) defendant's counsel said Storz came to his attention some time last week, maybe Friday (March 6), maybe Saturday (March 7); and (3) Storz testified on March 12 and said he first became aware of the case about 10 days ago on a Sunday evening (March 1). Based upon any reasonable interpretation of the record, it is obvious defendant became aware of Storz at the earliest on March 1 and at the latest on March 7. In any respect, it was prior to March 9, the date scheduled for trial when defendant requested a one-day continuance. yet for some unexplained reason, the surprise witness Storz was not announced until March 11.[3]

The trial court overruled plaintiff's objection to permitting Storz to testify, but permitted the plaintiff to depose Storz during a lunch break. There is no record that plaintiff sought a continuance because of the disclosure of this surprise witness.

■ Supreme Court Rule 219(c) (iv) (87 Ill. 2d R. 219(c)(iv)) permits the exclusion of a witness for unreasonable failure to comply with discovery requests. The determination of whether a witness should be excluded is within the sound exercise of the trial court's de-

---

[2]It is inconceivable that a discussion of this significance would take place in this manner without recording the entire discussion.

[3]The dissent seems to suggest that if opposing counsel does not talk to the witness until during the trial, the delay in advising the other party and court is excusable. We think this position overlooks the fact that counsel was aware of the witness at least five days before he informed the plaintiff, and disregards the good faith, duty and requirement of counsel, particularly in a case such as this. It ignores the fact that counsel twice referred to the fact that he was going to call the defendant plus one more witness.

cision. (*Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 133, 298 N.E.2d 233.) The factors to be considered in determining whether exclusion is proper are: "the surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony and the good faith of the party calling the witness." 12 Ill. App. 3d 129, 132.

■ In our opinion, the record clearly established that defendant wilfully violated the supreme court rules governing discovery. We therefore conclude that the trial court abused its discretion in refusing to bar the testimony of Storz. It is apparent that defendant knew of the existence of this witness for several days before disclosure to plaintiff. Due to the explosive impact that this witness' testimony had on plaintiff's case, time for investigation might have substantially aided plaintiff. For the same reason, late disclosure worked to defendant's advantage.

The dissent states that "the trial court's field of discretion in the employment of this sanction is narrowly circumscribed. (See *Mason v. Mundelein Lanes, Inc.* (1979), 72 Ill. App. 3d 990, 993-94, 391 N.E.2d 151; *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254, 259, 300 N.E.2d 855.)" In *Mason*, the excluded witness was first named as a potential witness early in 1975, over two years before trial. In *Smith*, defendant was permitted to call as witness a person not listed on defendant's answers to interrogatories. However, plaintiffs were aware that the witness was on the job while they were also employed on the job. We think these cases are inapposite.

We realize that plaintiff's counsel failed to protect plaintiff's interests to the fullest extent possible by failure to insist on answers to the interrogatories and failure to move for a continuance once the surprise witness was presented. We cannot, however, find a waiver in this lack of diligence by counsel in light of the deliberate concealment of a material witness by defendant. Accordingly, we hold that the trial court abused its discretion in refusing to impose the sanction of barring the testimony of Storz.

### III

■ The errors of the circuit court in failing to exclude Storz as a witness and in denying admission of the birth certificate into evidence warrant reversal and a remand for a new trial. Accordingly, we find it unnecessary to reach the other two issues raised by plaintiff. These issues are not likely to arise on remand.

The judgment of the circuit court is reversed, and this cause is re-

manded for further proceedings consistent with this opinion.

Reversed and remanded.

HARTMAN, J., concurs.

STAMOS, P.J., respectfully dissenting:
I would hold that the birth certificate was properly excluded from evidence and that the trial court did not abuse its discretion in refusing to exclude the testimony of James Storz.

My colleagues found that the birth certificate was relevant evidence of an essential element of the cause of action, namely the illegitimate birth of plaintiff's child. The declarations, and lack thereof, contained in the birth certificate which relate to the parentage of the child are hearsay, and inadmissible to prove that element of the paternity action. Section 25 of the Vital Records Act (Ill. Rev. Stat. 1979, ch. 111½, section 73—25) outlines the permissible evidentiary uses of a birth certificate or certification of birth and thus the scope of the "records of vital statistics" hearsay exception as it relates to such documents. (See Cleary and Graham, Handbook of Illinois Evidence sec. 803.14, at 450 (3d ed. 1979).) Subsection 6 of that statute provides that "[a]ny certification or certified copy of a certificate issued in accordance with this section shall be considered as prima facie evidence of the facts therein stated ***." Subsection 2 provides in pertinent part that "[t]he certification of birth shall contain only the name, sex, date of birth, and place of birth, of the person to whom it relates ***." Our supreme court has interpreted these two provisions, which appeared in the prior statute dealing with vital records (Ill. Rev. Stat. 1955, ch. 111½, par. 55), as limiting the evidentiary use of a certified record of birth (containing all the information on the birth certificate) to proof of only those facts which could properly be placed in a certification of birth. (See *People ex rel. Moran v. Teolis* (1960), 20 Ill. 2d 95, 105, 169 N.E.2d 232.) The information in the birth certificate relating to the parentage of the child could not be included in a certification and does not fall within the hearsay exception for records of vital statistics.

It is clear from the foundation which plaintiff's counsel attempted to lay for the birth certificate that the document was not offered to prove the birth of the child out of wedlock, but, as plaintiff asserts in her brief, to prove plaintiff's belief as to the identity of the father at the time the certificate was filled out and to thereby bolster her credibility as a witness. Plaintiff's state of mind when the certificate was

made out was never at issue in this case, and the sole purpose of the offer was to have the hearsay statements contained in the certificate admitted into evidence.

The majority holds that the out-of-court declarations of the plaintiff in the certificate are not hearsay because the declarant was a witness at the trial and therefore was available for cross-examination. (Citing *People v. Carpenter* (1963), 28 Ill. 2d 116, 120-22, 190 N.E.2d 738, in support of this interpretation of the hearsay rule.) However, *Carpenter* involved the frequently heard objection that a statement is inadmissible if it was made "out of the presence of the [criminal] defendant." In holding that this objection is essentially meaningless,[1] the court went on to state that the "fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination." (28 Ill. 2d 116, 121.) However, the thrust of that opinion was that in most cases the presence of absence of the opposing party when an out-of-court statement is made is immaterial. That case does not explicitly propound a rule that every out-of-court statement by a declarant witness is nonhearsay simply because the declarant is available for cross-examination. Rather, the generally accepted rule is that the prior out-of-court statements of witnesses are not available for use as substantive evidence. (See *McCoy v. Board of Fire & Police Commissioners* (1977), 54 Ill. App. 3d 276, 281, 369 N.E.2d 278.) Such out-of-court statements have been characterized as "pure hearsay." *Kubisz v. Johnson* (1975), 29

---

[1]The genesis of this curious objection can be traced to several opinions of our supreme court. In *People v. Schallman* (1916), 273 Ill. 564, 113 N.E. 113, the court held that the sales records of a purveyor of stolen goods were inadmissible to prove that the defendant had knowingly purchased stolen property. The records had been dictated to the declarant/witness, a bookkeeper for the seller, at a time when the defendant was not present. The court stated that:

"Declarations out of court, or statements of any kind by a third person against the accused and made in his absence and without his knowledge, are inadmissible as evidence against him. The rule is elementary, and a violation of it is a violation of the accused's constitutional right that he shall not only be informed of the nature of the charge against him but be permitted to meet the accusing witnesses face to face." 273 Ill. 564, 569.

In *People v. Blockburger* (1933), 354 Ill. 301, 310, 188 N.E. 440, the court reiterated this rule in commenting on a witness examination which it found to be improper for several reasons other than the absence of the defendant when the statements which the prosecutor sought to elicit were made. In *People v. Bennett* (1953), 413 Ill. 601, 110 N.E.2d 175, the court again held that a statement made out of the defendant's presence was inadmissible. The primary purpose for which the statement was offered in that case was to have the defendant's silence when the statement was repeated to him construed as an admission of guilt.

Ill. App. 3d 381, 383-84, 329 N.E.2d 815.

Frequently, a party's out-of-court statements which are unfavorable to the party's cause are allowed into evidence as substantive admissions. (See generally McCormick, Evidence sec. 262, at 628-31 (2d ed. 1972).) However, a party's out-of-court statements which are consistent with his or her pleadings or in-court testimony do not receive the same treatment. Such declarations are commonly referred to as "self-serving" statements and are held inadmissible under the hearsay rule. (See *People v. Colletti* (1968), 101 Ill. App. 2d 51, 55, 242 N.E.2d 63.) Prior out-of-court statements which are consistent with the witness' in court testimony are admissible only for purposes of rebutting a charge that the testimony is a recent fabrication or that some motive has arisen that would prompt the witness to testify falsely. (See *People v. Powell* (1973), 53 Ill. 2d 465, 474-75, 292 N.E.2d 409; Cleary and Graham, Handbook of Illinois Evidence sec. 611.14 at 319-20 (3d ed. 1979); McCormick, Evidence sec. 251, at 604; sec. 49, at 106 (2d ed. 1972); *cf.* 4 Wigmore sec. 1124, at 255 (Chadbourne rev. ed. 1972).) Under the Federal Rules of Evidence, prior consistent statements are classified as nonhearsay, and thus may be used as substantive evidence, but such statements may be offered only after a charge of recent fabrication has been made. Fed. R. Evid. 801(d)(1)(B).

Although the majority finds that defendant made a general attack on plaintiff's veracity by contesting the paternity action, there is nothing in the record to suggest that defendant attempted the specific type of impeachment which would render the hearsay declarations in the birth certificate admissible. I would therefore hold that the trial court acted properly in excluding the birth certificate from evidence.

This case is the first Illinois opinion which has held that a trial court's failure to apply the severe sanction of exclusion of a witness was an abuse of the trial court's discretion. In *Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 298 N.E.2d 233, the plaintiffs failed to disclose the names of any of the nonparty witnesses to the automobile collision that was the subject of the action. The plaintiffs had answered interrogatories five months before trial. The surprise witness called by the plaintiffs was the only nonparty occurrence witness who testified in the case. She was the sister of one of the plaintiffs, and she had knowledge of at least three other nonparty witnesses to the collision who were not deposed and not called to testify. The witness was disclosed during trial and the defense was allowed to interview the witness for five minutes prior to her testimony. The court stated that there were strong indications of lack of good faith in the nondisclosure of the witness' identity, that the "deposition" the

defendants were allowed to take was inappropriately brief, that the defendants were severely prejudiced by the nondisclosure of the witness because the other nonparty witnesses would have been discovered through her, and that the defendants were also prejudiced because the court must have placed a great deal of reliance on the testimony of the only nonparty available to testify to the occurrence at issue. However, the court held that the trial court did not abuse its discretion in refusing to exclude the witness. (*Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 133.) While that holding was based in part on the fact that the trial judge was not informed at the time of his ruling as to the relationship of the witness to one of the plaintiffs or that she was an occurrence witness, that case nonetheless illustrates the extreme reluctance with which the sanction of witness exclusion should be applied.

In *Kirkwood*, the plaintiffs were aware of the existence of the witness, and probably the existence of the other occurrence witnesses, for months prior to trial. In the instant case, defendant contacted the witness a week or 10 days prior to trial. Defendant's counsel did not speak to the witness, and thus had no chance to determine if the witness should be called, until the day before the witness was called. On the same day that he interviewed the witness, defendant's counsel notified the court and opposing counsel that he intended to present Storz' testimony, and plaintiff's counsel was given the belated opportunity to take a full deposition of the witness. Although the record plainly shows that defendant and his counsel could have acted with a good deal more diligence and courtesy in making plaintiff aware of the existence of this witness, this conduct does not amount to the showing of deliberate concealment that was present in *Kirkwood*.

The instant case is also distinguishable from *Kirkwood* in that the delay in disclosure probably resulted in less prejudice to the opposing party. In *Kirkwood* the delay made it impossible for the defendants to depose or even contact two occurrence witnesses other than the witness who testified. Knowledge of those witnesses would have at the least been helpful in preparing the defendant's case for trial, and might have resulted in the presentation of testimony which would have been less favorable to the plaintiffs than the testimony of the witness that was called. Although plaintiff here would have surely benefited from an opportunity to investigate the basis of Storz' testimony, there is nothing in the record to suggest that a whole class of important witnesses was made unavailable to plaintiff because of the delay. The prejudice to plaintiff that was worked by the delay is therefore far more speculative than the obvious prejudice to the defendants in *Kirkwood*.

Additionally, the surprise witness in *Kirkwood* was the only nonparty occurrence witness called at trial, and her testimony was undoubtedly given great weight by the trial court. In the instant case, it is difficult to ascertain what affect Storz' testimony had on plaintiff's case. His testimony on direct, if taken alone, would appear to be damaging to plaintiff. However, on cross-examination, plaintiff's counsel asked Storz a series of questions concerning plaintiff's physical attributes. Storz' answers to these questions were all wildly inaccurate. That impeachment, taken with the vagueness of Storz' testimony as a whole, might justify this court in concluding that the jury completely disregarded the testimony of this witness but still determined that plaintiff had not met her burden of proof.

Other Illinois cases which have dealt with the sanction of exclusion illustrate that the trial court's field of discretion in the employment of this sanction is narrowly circumscribed. (See *Mason v. Mundelein Lanes, Inc.* (1979), 72 Ill. App. 3d 990, 993-94, 391 N.E.2d 151; *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254, 259, 300 N.E.2d 855.) Although defendant's attitude toward the discovery process cannot be condoned, the conduct of defendant and his counsel was not so egregious as to make exclusion of the witness appropriate. I would hold that the trial court did not abuse its discretion in allowing the witness to testify.

I would also hold that the verdict was not against the manifest weight of the evidence, and that the improper remarks of defendant's counsel during closing argument were not prejudicial to plaintiff because of the curative remarks of counsel and of the court.

Therefore, I would affirm.

